```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| **ELSA ALAGO HERNANDEZ,**<br><br>    **Plaintiff**<br><br>         **v.**<br><br>**WESTERNBANK PUERTO RICO INC. et a.,**<br>    **Defendants** | **CIVIL NO.** 10-1573 (JAG) |

### OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is Federal Deposit Insurance Corporation's Motion to Dismiss Complaint for Failure to Exhaust Mandatory Administrative Claims Process, (Docket No. 9), and Norberto Rivera's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6). (Docket No. 20).

### FACTUAL AND PROCEDURAL BACKGROUND

On March 30, 2009, Elsa Alago Hernández filed a Complaint with the Puerto Rico Court of First Instance ("State Court"). (Docket No. 6-1). The Complaint names Westernbank Puerto Rico ("Westernbank"), Norberto Rivera ("Rivera"), a Comptroller employed by Westernbank, ABC Insurance and John Doe as defendants. In the Complaint, Plaintiff alleges she was

continually harassed by Rivera, her superior, and Westernbank, aware of the situation, took no action to prevent it. She claims remedies under Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 *et seq.;* and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A §§ 2000e et seq.

Specifically, Plaintiff avers that Rivera, whom she met in College, confessed to her in 2003 that he had been in love with her when they were students. (Docket No. 6-1, ¶ 8). She denies any and all knowledge of Rivera's love before 2003, and claims that she was never involved in a romantic relationship with him. Plaintiff further alleges that, when Rivera started working for Westernbank as Comptroller in 2004, he approached her and said: "I used to be in love with you and you didn't even look at me, now take this!" (Docket No. 6-1, ¶ 9).

According to Plaintiff, Rivera has been harassing and intimidating her ever since, verbally abusing her in front of Westernbank employees and employees of other businesses.[1] (Docket No. 6-1, ¶¶ 10, 12). Plaintiff also avers that the abuse reached a point where she had to take medical leave and receive psychiatric treatment at the State Insurance Fund Corporation ("SIFC") twice. (Docket No. 6-1, ¶¶ 15-17). After returning from

---

[1] A list of specific alleged incidents can be found in Docket No. 6-1, ¶ 12.

Civil No. 10-1573 (JAG)                                                3

her first medical leave, she was assigned to a lower position. (Docket No. 6-1, ¶ 16). She was then told it was due to a reorganization of the department, but she was the only one affected. Id.

Finally, Plaintiff posits that Westernbank knew or should have known about Rivera's alleged behavior since she approached several managers and other officials on a number of occasions regarding the matter. (Docket No. 6-1, ¶¶ 11, 12(II), 18). On one occasion, Plaintiff claims that a manager of higher rank intervened unofficially on her behalf. (Docket No. 6-1, ¶ 18).

On April 30, 2010, the Federal Deposit Insurance Corporation (hereinafter "FDIC") was appointed receiver of Westernbank. (Docket No. 1-1). On June 22, 2010 FDIC removed this action to federal court pursuant to 42 U.S.C. § 1819(b)(2)(B). On January 12, 2011, FDIC filed a Motion to Dismiss Complaint for Failure to Exhaust Mandatory Administrative Claims Process, (Docket No. 9), which was timely opposed by Plaintiff. (Docket. No 12). The FDIC filed a reply to Plaintiff's opposition. (Docket No. 18).

Rivera filed a Motion to Dismiss pursuant to Rule 12(b)(6), (Docket No. 20), which was also timely opposed by Plaintiffs. (Docket No. 22).

Civil No. 10-1573 (JAG)                                                4

## STANDARD OF REVIEW

The FDIC insures depository institutions that meet certain requirements. 12 U.S.C. § 1815(a). When an insured institution fails, the FDIC may be appointed receiver or conservator and "will succeed to all rights, titles, powers, and privileges of the insured depository institution." 12 U.S.C. § 1821(d)(2)(A). An institution can come under receivership for any of the reasons listed in 12 U.S.C. § 1821(c)(5).

When dealing with claims filed in courts before the FDIC is appointed receiver ("pre-receivership"), the FDIC has two choices: (1) to continue judicially and permit the case to run its course or; (2) opt to compel the claimant to proceed via an administrative process by requesting a stay of the judicial proceedings within 90 days of its appointment as receiver. 12 U.S.C. § 1821(d)(12)(A). When the FDIC opts for the latter option, "FIRREA makes participation in the administrative review process mandatory for all parties asserting claims against failed institutions." Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992). Several Circuits have also affirmed the FDIC's option to continue on the judicial road holding that "FIERRA […] permits federal courts to retain subject matter jurisdiction in circumstances where a bank's failure (and the FDIC's appointment

Civil No. 10-1573 (JAG)                                           5

as receiver) postdates the institution of a suit against the bank." Marquis, 965 F.2d at 1154. See also Damiano v. FDIC, 104 F.3d 328, 335 (11th Cir. 1997); Whatley v. Resolution Trust Corp., 32 F.3d 905, 908 (5th Cir. 1994); Greater Slidell Auto Auction v. American Bank & Trust Co., 32 F.3d 939, 941 (5th Cir. 1994); Carney v. Resolution Trust Corp., 19 F.3d 950, 956 (5th Cir. 1994).

Regarding motions under Rule 12(b)(6), the Supreme Court has stated in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), that in order for a complaint to survive it must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). While Twombly does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified the principles that must

Civil No. 10-1573 (JAG)                                                    6

guide this Court's assessment of the adequacy of the plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. *Id.* at 1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing Twombly, 550 U.S. at 555). A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. *Id.* at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. *Id.* at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. *Id.* at 1950.

    In a recent case, Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit analyzed and distilled several principles from the Supreme Court decisions in Twombly and Iqbal. It thus boiled down the inquiry a Court must perform while resolving a motion to dismiss under Fed.R.Civ.Proc.

Civil No. 10-1573 (JAG)                                             7

12(b)(6) to a two-pronged approach. The first step involves the process of identifying and disregarding the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact. Occasion-Hernández, F. 3d at 23-24. The second step involves treating the non-conclusory factual allegations as true, even if seemingly incredible, and determine if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Id. at 24-25 (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The First Circuit warned that even if determining the plausibility of a claim "requires the reviewing court to draw on its judicial experience and common sense," it must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Id. at 25 (quoting Iqbal, 129 S. Ct. at 1950) (other citations omitted). It further stated that, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 26.

**DISCUSSION AND ANALYSIS**

FDIC alleges that Plaintiff did not comply with the mandatory administrative claims process under FIRREA. (Docket No. 9). FDIC, citing Carney v. FDIC, 19 F.3d 950 (5th Cir. 1994), aver that participation in the administrative claims process under FIRREA is not optional. In Carney, the Fifth Circuit held that "FIRREA makes participation in the administrative claim review process mandatory, regardless of whether the claims were filed before or after the [FDIC] was appointed receiver of the failed institution." Id. at 955. FDIC also argues that "actions commenced against a failed financial institution for which the FDIC has been appointed as a Receiver must be dismissed unless a claimant has completed the mandatory claims process." (Docket No. 9, p. 8).

In her opposition, Plaintiff avers that "[she] did not need to exhaust the administrative procedures, and the Honorable Court has jurisdiction over this case" because cases commenced pre-receivership need not go through the administrative process and "[FDIC's] request doesn't make sense after almost two years of proceedings." (Docket No. 12, ¶ 7 and pp. 5-6). In its reply, the FDIC reiterated previous arguments about the administrative claims process being mandatory.

Civil No. 10-1573 (JAG)                                              9

The FDIC may compel claimants to exhaust administrative remedies in pre-receivership cases, but only if it moves the court for a stay within 90 days of its appointment as receiver. Damiano v. FDIC, 104 F. 3d 328, 335 (11th Cir. 1997); Whatley v. RTC, 32 F. 3d 905, 910 (5th Cir. 1994). According to the First Circuit "FIRREA did not strip the federal courts of subject matter jurisdiction over civil actions pending against a failed financial institution at the time the FDIC takes over as the institution's receiver." Marquis v. FDIC, 965 F. 2d 1148, 1155 (1st Cir. 1992). Nowhere in the Docket does the Court find a request by FDIC to stay the case in accordance with 12 U.S.C. § 1821(d)(12)(A). The fact of the matter is that the FDIC did not follow the procedure required to compel the administrative route since it did not request a stay. Therefore, the case shall continue the judicial route.

In his motion to dismiss, Rivera argues that "the complaint's descriptions of those purported jobsite interactions fail to imply *any* sexual impropriety in action or motive on Mr. Rivera's part, much less a cause of action for sexual harassment." (Docket No. 20, p. 3). In her opposition Plaintiff cites Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987). In Hicks the Tenth Circuit held that: "any harassment or other

Civil No. 10-1573 (JAG)                                              10

unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII." Id. at 1419. She adds that Rivera's behavior is motivated by his former feelings and, therefore, motivated by her sex. (Docket No. 22).

"To prove a claim of hostile work environment sexual harassment, a plaintiff must demonstrate: (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002). Regarding the third prong of the test, the First Circuit recently held that "[w]hether a harasser picks his or her targets because of a prior intimate relationship, desire for a future intimate relationship, or any other factor that draws

Civil No. 10-1573 (JAG)                                              11

the harasser's attention should not be the focus of the Title VII analysis." Forrest v. Brinker Intern. Payroll Co., 511 F.3d 225, 229 (1st Cir. 2007). See also Bodman v. Maine DHHS, 720 F. Supp. 2d 115, 120-122 (D. Maine 2010). Instead, the focus of Title VII analysis should be the specific conduct; "if the harassing conduct is gender-based, Title VII's requirement that the harassment be 'based upon sex' is satisfied." Forrest, 511 F.3d at 229. (citations omitted). Plaintiff's allegations are not enough to meet the third prong of the test. Rivera's alleged behavior is not facially gender biased and Plaintiff's claims do not aver her gender as the basis for the discrimination beyond Rivera's purported feelings towards her. Therefore, Plaintiff's Title VII claim against all defendants shall be dismissed.

Regarding Plaintiff's claim under Law 100, the First Circuit has decided that "once the employee triggers [Law 100's] protections . . . the employee enjoys a presumption that he or she has been the victim of discrimination and the burdens of both production and persuasion shift to the employer." Ramos v. Davis & Geck, Inc., 167 F.3d 727, 734 (1st Cir. 1999). To trigger the presumption under Law 100 that the employer engaged in discriminatory conduct, the employee must show: (1) that she suffered an adverse employment action; (2) that there was no

Civil No. 10-1573 (JAG)                                          12

just cause for the adverse employment action; and (3) some basic fact substantiating the type of discrimination alleged. See Colón-Muriel v. ASC, 499 F. Supp. 2d 98 (D.P.R. 2007).

Plaintiff has pleaded, to the satisfaction of the Court, the first and second elements of a cause of action under law 100. However, she fails to plead that Defendant's actions were motivated by her gender in violation of Law 100. Plaintiff cannot sustain her claim under Law 100 by arguing that the adverse employment actions taken against her would not occur but for her gender. Rivera's comments and actions, though certainly objectionable and perhaps even actionable, were not motivated by Plaintiff's sex. If Rivera's sexual orientation were otherwise, he would have presumably acted in like manner had it been a man who was, in the past, the object of his affection. Accordingly, Plaintiff's claim under Law 100 is also dismissed.

**CONCLUSION**

For the reasons stated above, the Court hereby **GRANTS** Defendant's Motion to Dismiss. Plaintiff's Title VII gender discrimination claim is dismissed with prejudice. Plaintiff's state law claim is dismissed without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of August, 2011.

Civil No. 10-1573 (JAG)                                                  13


                                          S/ Jay A. García-Gregory
                                          JAY A. GARCÍA-GREGORY
                                          United States District Judge